Original

1 Edward R. Hugo [Bar No. 124839]
James C. Parker [Bar No. 106149]
2 Thomas J. Moses [Bar No. 116002]
tmoses@bhplaw.com
3 BRYDON HUGO & PARKER
135 Main Street, 20th Floor
4 San Francisco, CA 94105
Telephone: (415) 808-0300
5 Facsimile: (415) 808-0333

**FILED**

E-filing

JAN 20 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

6 Attorneys for Defendant
LESLIE CONTROLS, INC.

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11 WILLIAM HIGGINS and ANTOINETTE
12 HIGGINS,

(ASBESTOS)

USDC No.

13                    Plaintiffs,

14          vs.

Alameda Superior Court Case No.
RG09489702

A.W. CHESTERTON COMPANY;
15 ALLIED PACKING & SUPPLY, INC.;
ASBESTOS CORPORATION, LTD.;
16 AURORA PUMPS; BORG-WARNER
CORPORATION BY ITS SUCCESSOR-
17 IN-INTEREST, BORG-WARNER MORSE
TEC INC.; BUFFALO PUMPS, INC.;
18 CATERPILLAR, INC.; CRANE CO.,
INDIVIDUALLY AND AS SUCCESSOR-
19 IN-INTEREST TO CHAPMAN VALVE
CO.; CROWN, CORK & SEAL,
20 INDIVIDUALLY AND AS SUCCESSOR-
IN-INTEREST TO MUNDET CORK;
21 DAIMLER TRUCKS NORTH AMERICA
LLC, INDIVIDUALLY AND ON
22 BEHALF OF ITS FREIGHTLINER
TRUCKS DIVISION; EUCLID-HITACHI
23 HEAVY EQUIPMENT, LTD;
FLOWSERVE CORPORATION,
24 INDIVIDUALLY AND AS SUCCESSOR-
IN-INTEREST TO PACIFIC PUMP;
25 GARDNER DENVER, INC.; GARLOCK
SEALING TECHNOLOGIES LLC,
26 INDIVIDUALLY AND AS SUCCESSOR-
IN-INTEREST TO GARLOCK, INC.;
27 GENERAL ELECTRIC COMPANY;
GOULDS PUMPS, INCORPORATED;
28 HITACHI CONSTRUCTION TRUCK

DEFENDANT LESLIE CONTROLS, INC.'S
NOTICE OF REMOVAL

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1

1  MANUFACTURING LTD., FKA
   EUCLID-HITACHI HEAVY
2  EQUIPMENT, LTD; HONEYWELL
   INTERNATIONAL, INC. FKA ALLIED
3  SIGNAL INC., INDIVIDUALLY AND AS
   SUCCESSOR-IN-INTEREST TO THE
4  BENDIX CORPORATION; IMO
   INDUSTRIES, INC. FORMERLY
5  KNOWN AS IMO DELAVAL INC.;
   INGERSOLL-RAND COMPANY;
6  KAMAN INDUSTRIAL
   TECHNOLOGIES CORPORATION,
7  INDIVIDUALLY AND AS SUCCESSOR-
   IN-INTEREST TO WINN SUPPLY
8  COMPANY; KENWORTH SALES
   COMPANY; LESLIE CONTROLS, INC.;
9  M. SLAYEN AND ASSOCIATES, INC.;
   METALCLAD INSULATION
10 CORPORATION; PACCAR, INC.
   INDIVIDUALLY, AS SUCCESSOR-IN-
11 INTEREST, DBA AND FKA PETERBILT
   MOTORS COMPANY AND
12 KENWORTH; PAGE GROUP
   HOLDINGS, INC.; PARKER-HANNIFIN
13 CORPORATION, INDIVIDUALLY AND
   AS SUCCESSOR-IN-INTEREST TO
14 SACOMO SIERRA AND SACOMO
   MANUFACTURING COMPANY;
15 PATTERSON PUMP COMPANY,
   INDIVIDUALLY, AS PARENT, ALTER
16 EGO AND SUCCESSOR-IN-INTEREST
   TO C.H. WHEELER; PLANT PRODUCTS
17 & SUPPLY CO.; PNEUMO-ABEX LLC,
   INDIVIDUALLY AND AS SUCCESSOR-
18 IN-INTEREST TO ABEX
   CORPORATION; SEPCO
19 CORPORATION; SOCO-WEST, INC.
   FKA BRENNTAG WEST, INC. FKA
20 SOCO-LYNCH CORPORATION,
   INDIVIDUALLY AND AS SUCCESSOR-
21 IN-INTEREST TO WESTERN
   CHEMICAL & MANUFACTURING
22 COMPANY; TEREX CORPORATION;
   UNION CARBIDE CORPORATION;
23 VIACOM, INCORPORATED AS
   SUCCESSOR-BY-MERGER TO CBS
24 CORPORATION FKA WESTINGHOUSE
   ELECTRIC CORPORATION; WEIL
25 PUMP COMPANY; WEIL PUMP
   COMPANY INC.; WESTERN STATES
26 EQUIPMENT COMPANY,
   INDIVIDUALLY AND AS SUCCESSOR-
27 IN-INTEREST TO WESTERN
   EQUIPMENT COMPANY; YARWAY
28 CORPORATION AND THE FIRST DOE

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

2

DEFENDANT LESLIE CONTROLS, INC.'S NOTICE OF REMOVAL

1 | THROUGH THREE HUNDREDTH DOE, INCLUSIVE,

2

3 | Defendants.

4 | TO THE CLERK AND THE HONORABLE JUDGE OF THE ABOVE-ENTITLED COURT:

5 | PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. § 1442(a)(1) and 1446,

6 | Defendant LESLIE CONTROLS, INC. ("Leslie Controls") hereby gives notice of the

7 | removal of an action filed against it in the Superior Court of California, County of

8 | Alameda, to the United States District Court for the Northern of California. In support,

9 | Leslie Controls respectfully offers the following:

10 | **Preliminary Matters**

11 | 1. This Court has subject matter jurisdiction over this case because the claims

12 | involve a person, Leslie Controls, acting under the authority of an officer or agency of the

13 | United States. (28 U.S.C. § 1442; *Freiberg v. Swinerton & Walberg Property Services, Inc.*, 245

14 | F.Supp.2d 1144, 1150 (2002).)

15 | 2. The claims are pending within the District and the Division of this Court.

16 | Therefore, the claims should be assigned to this Division.

17 | 3. On or about December 17, 2009, Plaintiffs WILLIAM HIGGINS and

18 | ANTOINETTE HIGGINS ("Plaintiffs") filed this lawsuit, entitled *William Higgins and*

19 | *Antionette Higgins vs. A.W. Chesterton Company, et al.*, Case No. RG09489702, against Leslie

20 | Controls and several other defendants in the Superior Court of the State of California,

21 | County of Alameda. (See Plaintiffs' Summons and Complaint, a true and correct copy of

22 | which is attached hereto as Exhibit A.)

23 | 4. Plaintiffs served Leslie Controls with Plaintiffs' Summons and Complaint

24 | on December 21, 2009. The Complaint includes allegations that Plaintiff William Higgins

25 | has developed an asbestos-related condition as a result of exposure to asbestos dust

26 | and/or fibers while serving in the United States Navy and aboard Navy ships. (See

27 | Exhibit A, at 7:23-28.) More specifically, Plaintiffs' Complaint contains allegations that

28 | Plaintiff William Higgins was exposed to asbestos while working on, among other ships,

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

3

DEFENDANT LESLIE CONTROLS, INC.'S NOTICE OF REMOVAL

1 the USS TURNER JOY (DD-951) and the USS HULL (DD-945) between 1973 and 1977.

2 (*Ibid.*) Plaintiffs claim that Leslie Controls is one of a number of defendants responsible

3 for providing asbestos-containing products to which Plaintiffs allege that Mr. Higgins

4 was exposed during his Naval career and otherwise.

5     5.     Thus, this Notice of Removal is timely filed in that it is filed within thirty

6 (30) days after the first receipt by Leslie Controls of Plaintiffs' initial pleadings from

7 which it ascertained that this case is removable as to this defendant. (28 U.S.C. § 1446(b).)

8 ## Nature Of The Case

9     6.     The case is based on Plaintiffs' allegations that Plaintiff William Higgins

10 asbestos-related disease, specifically mesothelioma, was caused by his exposure to

11 asbestos dust and/or fibers.

12     7.     Plaintiffs assert failure to warn claims along with strict liability and

13 negligence claims against Leslie Controls and the other defendants based on various

14 theories.

15 ## Grounds For Removal

16     8.     This Notice of Removal is filed within thirty (30) days of Plaintiffs' service

17 of the Summons and Complaint on Leslie Controls. (28 U.S.C. § 1446(b).)

18     9.     Any equipment manufactured for the United States Navy by Leslie

19 Controls to be used aboard Naval vessels was manufactured under the direction and

20 control of a federal officer. (See, generally, the Declaration of Ret. Adm. Roger Horne[1]

21 ["Horne Decl."], a true and correct copy of which is attached hereto as Exhibit B, and the

22 Affidavit of Matthew Wrobel[2] ["Wrobel Affid."], a true and correct copy of which is

23 attached hereto as Exhibit C.) Leslie Controls manufactured and designed equipment

24

25 [1] Roger B. Horne is a retired Rear Admiral of the United States Navy, and served in the

26 Navy from 1956 to 1991. During his Naval career, he achieved the rank of Chief Engineer
and Deputy Commander, Naval Sea Systems Command ("NAVSEA") for Ship Design

27 and Engineering.

28 [2] Matthew Wrobel worked for Leslie Controls in various capacities for forty-one years,
including as the Group Director of Quality Assurance.

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1    sold to the Navy according to the precise, detailed specifications of the United States

2    Navy. The United States Navy enforced compliance with those design specifications and

3    no aspect of the design of that equipment escaped the close control of the United States

4    Navy and its officers, including all aspects of warnings associated with the equipment.

5    (See Horne Decl., Exhibit B, at 6:5-12; Wrobel Affid., Exhibit C, at 1:22-2:2, 3:19-4:11.) The

6    basis for Leslie Controls' removal of this matter is that, in the manufacture and sale of

7    equipment for the Navy, including all aspects of warnings associated with that

8    equipment, Leslie Controls was acting under an officer or agency of the United States

9    within the meaning of 28 U.S.C. § 1442(a)(1).

10   10.    Should Plaintiffs file a motion to remand this case, Leslie Controls

11   respectfully requests an opportunity to respond more fully in writing, but offers the

12   following authorities at this time:

13   11.    Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the

14   moving party can (1) demonstrate that it acted under the direction of a federal officer, (2)

15   raise a colorable federal defense to Plaintiffs' claims, and (3) demonstrate a causal nexus

16   between Plaintiffs' claims and acts it performed under color of federal office. (*Mesa v.*

17   *California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989).)

18   12.    In 2006, the Ninth Circuit unequivocally stated that "the Supreme Court

19   has mandated a generous interpretation of the federal officer removal statute...[and] has

20   held that the right of removal is absolute for conduct performed under color of federal

21   office, and has insisted that the policy favoring removal should not be frustrated by a

22   narrow, grudging interpretation of § 1442(a)(1)." (*Durham v. Lockheed Martin Corporation*,

23   445 F.3d 1247, 1252 (9th Cir. 2006) [citations omitted].) In light of the *Durham* court's

24   ruling, many California federal district courts, including this Court, have recently held

25   that they are required to interpret Section 1442 broadly in favor of removal where a

26   manufacturer of equipment demonstrates that it acted under the direction of a federal

27   officer, raises a colorable federal defense to a plaintiffs' claims, and establishes a causal

28   connection between its alleged action under the control of a federal officer and the

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

5

1 plaintiff's claims. (See, e.g., *Ballenger v. Agco Corporation*, 2007 WL 1813821 (N.D. Cal.

2 June 22, 2007) (attached hereto as Exhibit D); *Nelson v. Alfa Laval, Inc.*, CV 07-

3 8338VFB(RCx) (a copy of Judge Fairbank's Order is attached hereto as Exhibit E); *Wright*

4 *v. A.W. Chesterton, Inc.*, CV 07-05403MJJ (a copy of Judge Jenkins' Order is attached

5 hereto as Exhibit F); *Oberstar v. CBS Corp.*, CV 08-118PA (JWJx) (a copy of Judge

6 Anderson's Order is attached hereto as Exhibit G); *Redman v. A.W. Chesterton Company*,

7 CV 08-03013JSW (a copy of Judge White's Order is attached hereto as Exhibit H).)

8       13.     Federal courts have closely analyzed the connection between the

9 government contractor defense and the ability of defendants to remove under §

10 1442(a)(1). For example, in *Isaacson v. Dow Chemical Company*, 304 F.Supp.2d 442

11 (E.D.N.Y. 2004), plaintiff originally sued the manufacturer of Agent Orange in New

12 Jersey State Court. Defendants removed to federal court asserting, among other things,

13 federal jurisdiction under the All Writs Act. (*Id.* at 445.) The New Jersey District Court

14 found removal appropriate under the All Writs Act. (*Id.*) The case was then transferred

15 to the Eastern District of New York by the Multidistrict Panel. (*Id.*) The Court of Appeals

16 for the Second Circuit affirmed the district court's denial of remand finding jurisdiction

17 appropriate under the All Writs Act. (*Stephenson v. Dow Chemical Company*, 273 F.3d 19

18 (2d Cir. 2003).) On review, the United States Supreme Court remanded the case finding

19 that the All Writs Act alone would not support removal. (*Dow Chemical Company v.*

20 *Stephenson*, 539 U.S. 111 (2003).) On remand from the Supreme Court, the Second Circuit

21 determined that jurisdiction could not be grounded in the All Writs Act and remanded

22 the case back to the Eastern District of New York to determine if there was an alternative

23 ground supporting federal jurisdiction. (*Stephenson v. Dow Chemical Company*, 346 F.3d 19

24 (2d Cir. 2003).) It is with that extensive procedural history that the district court

25 examined the federal officer removal statute and found it sufficient to deny Plaintiff's

26 motion to remand. (*Isaacson*, 304 F.Supp. at 445.)

27       14.     In reaching its conclusion, the *Isaacson* court discussed in detail the three

28 elements necessary for removal under this statute. First, a defendant must demonstrate

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

6

DEFENDANT LESLIE CONTROLS, INC.'S NOTICE OF REMOVAL

that it is a "person" within the meaning of the statute. (*Id.* at 446.) The definition of a "person" includes a corporation. (*Id.*) Second, the defendant must establish that the suit is "for any act under color of federal office," i.e., there is a causal connection between the charged conduct and asserted official authority. (*Id.* [citations omitted].) Causation exists if the predicate acts of the state court suit were undertaken while the person was acting as or under a federal officer, and the acts were under color of the relevant federal office. (*Id.*) Third, defendants must raise a colorable claim to a federal law defense. (*Id.*) As previously stated, a colorable claim to a federal defense can be predicated upon the federal government contractor defense. (*Id.* at 449.)

15. Leslie Controls is a "person" within the meaning of § 1442(a)(1), being a corporation which entered into various contracts with the United States Navy for the manufacture of equipment for use on United States Navy vessels.

16. As recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504 (1988), Leslie Controls has a federal defense to this action, *i.e.*, government contractor immunity from liability for injuries arising from any exposure to asbestos related to asbestos-containing equipment on board United States Navy vessels, insofar as they were manufactured or repaired by Leslie Controls. (See also *Carley v. Wheeled Coach*, 991 F.2d 1117, 1123 (3rd Cir. 1993); *Kleeman v. McDonnell Douglas Corp.*, 890 F.2d 698, 700 (4th Cir. 1989); *Garner v. Santora*, 865 F.2d 629, 634 (5th Cir. 1991).)

17. A causal nexus exists between the defendant's actions under the federal officer and plaintiff's state court claims. (*Isaacson, supra,* at 447.) A substantial degree of direct and detailed federal control over defendant's work is required. (*Id.*) What constitutes sufficient federal control is often central to a court's decision to uphold removal or remand a case. Several courts, including this court, have upheld removal because defendants were sued as a result of building products pursuant to military specifications. (See, e.g., *Curry v. American Standard, Inc.*, 08-cv-10228GBD (S.D.N.Y. Feb. 6, 2009) (a copy of Judge Daniels' Order is attached hereto as Exhibit I) (defendant proffered sufficient evidence of government control over the contract specifications,

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

7

DEFENDANT LESLIE CONTROLS, INC.'S NOTICE OF REMOVAL

1 manuals and warnings to demonstrate that it had a colorable government contractor

2 defense); *Salamante v. Quintec Indus., Inc.*, CV 08-4674 PA (JTLx) (C.D.Cal Sept. 22, 2008)

3 (a copy of Judge Anderson's Order is attached hereto as Exhibit J) (defendant submitted

4 sufficient evidence for purposes of section 1442(a)(1) to demonstrate that the Navy's

5 control over warnings directly interfered with its duty to warn under state law); *Reaser v.*

6 *Allis Chambers Corp., et al.*, CV08-1296-SVW(SSx) (C.D.Cal June 23, 2008) (a copy of Judge

7 Wilson's Order is attached hereto as Exhibit K) (evidence provided by defendants

8 established that the Navy exercised strict control over defendants' ability to place

9 warnings on their products and Defendants met the elements of the government

10 contractor defense); *O'Connell v. Foster Wheeler Energy Corp., et al.*, 544 F.Supp.2d 51

11 (D.Mass. 2008) (attached hereto as Exhibit L)(affidavits submitted by defendant

12 established that the specifications for the pump component supplied to the Navy by

13 defendant were detailed, precise, and under the Navy's pervasive control); *Jenkins v.*

14 *Allied Packing & Supply, Inc.*, 09-cv-0101 DMS (S.D.Cal. March 25, 2009) (a copy of Judge

15 Sabraw's Order is attached hereto as Exhibit M) (Leslie Controls proffered sufficient

16 evidence of government control over the contract specifications, manuals and warnings

17 to demonstrate that it had a colorable government contractor defense); *Wright v. A.W.*

18 *Chesterton, Inc.*, Exhibit F, *supra* (removal was proper as defendant provided sufficient

19 evidence supporting a finding that the Navy had direct and detailed control over its

20 ability to place warnings on its equipment manufactured for the Navy and according to

21 precise Navy specifications); see also *Crocker v. Borden*, 852 F.Supp. 1322 (E.D.La.

22 1994)(holding that removal was proper for Westinghouse because its marine turbines

23 were manufactured pursuant to Navy specifications); see also *Pack v. AC and S, Inc.*, 838

24 F.Supp. 1099 (D.Md. 1993)(holding that removal was proper for Westinghouse because

25 the government had extensive control over the manufacture of turbines, even specifying

26 the type of asbestos cloth); see also *Murphy v. General Electric Company, et al.*, 09-cv-00217

27 WWE (D. Conn. July 15, 2009) (defendants' affidavits sufficiently established that the U.S.

28 Navy imposed 'reasonably precise specifications' on GE and BP, both in the design of the

1  equipment it supplied and in the content of the accompanying written materials,
2  including warnings). Not all courts agree, however, on the amount of federal control
3  necessary to uphold removal under this statute.

4  18.    Certain courts have not always viewed this issue consistently. Prior to the
5  *Isaacson* case, the Eastern District Court of New York remanded a similar matter
6  involving Agent Orange. In *Ryan v. Dow Chemical Company*, 781 F.Supp. 934, 950
7  (E.D.N.Y. 1992), the district court remanded the case because it found that the control by
8  the government was not sufficient to meet the requirements of section 1442(a)(1). The
9  district court reasoned that the government sought only to buy a ready-to-order
10  herbicide from the defendant and did not cause or control the production of the
11  unwanted byproduct, dioxin, which was the alleged cause of the injuries. (*Id.*)

12  19.    In discussing *Ryan*, the *Isaacson* court acknowledged that it was a
13  contradictory decision. (*Isaacson, supra*, 304 F.Supp. at 445.) It declared, however, that
14  the *Ryan* decision was "no longer persuasive" and went on to discuss Fifth Circuit cases
15  that specifically rejected the *Ryan* conclusion. (See *Winters v. Diamond Shamrock Chemical*
16  *Co.*, 149 F.3d 387, 392 (5th Cir. 1998) (holding that manufacturer of Agent Orange was
17  entitled to removal pursuant to the federal officer removal statute); see also *Miller v. Dow*
18  *Chemical Company*, 275 F.3d 414, 417 (5th Cir. 2001) (also holding that manufacturer of
19  Agent Orange was entitled to removal pursuant to the federal officer removal statute).)
20  The *Isaacson* court denied remand based on facts that were almost identical to those in
21  *Ryan*. The *Isaacson* court concluded that the government ordered specifications differed
22  from the specifications for the defendants' commercial application of the product.
23  (*Isaacson, supra*, at 450.) In addition, the method of warning and application was
24  completely in the government's hands. (*Id.*) Finally, the government had full knowledge
25  of the dioxin "problem" inherent in the production of Agent Orange. (*Id.*) These factors
26  demonstrated the control with which the government operated and, thus, warranted a
27  different holding than *Ryan*. (*Id.*)

28  20.    Removal on federal officer (federal contractor) grounds also applies to

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

9

1  "failure to warn" cases where "there is evidence that the government was involved in the

2  decision to give, or not to give, a warning." (*Kerstetter v. Pacific Scientific Co.*, 210 F.3d 431,

3  438 (5th Cir.) *cert. denied* 531 U.S. 919 (2000).) In *Kerstetter*, the court held that the

4  government contractor defense is available in "failure to warn" claims where the evidence

5  shows that the lack of a warning reflects governmental direction or control rather than

6  the unfettered discretion of the product's manufacturer, and applies wherever: 1) the

7  government approved or authorized the warnings which the plaintiff contends were

8  inadequate or incomplete; 2) the warnings provided by the manufacturer conformed to

9  the warnings as approved or authorized by the government; and 3) the manufacturer

10  warned the government as to any product hazards known by the manufacturer but

11  unknown by the government. (*Kerstetter, supra,* 210 F.3d at 438.)

12      21.    As stressed in *Kerstetter*, "[t]he government need not prepare the

13  specifications to be considered to have approved them." (*Id.* at 435.) The only material

14  issue is whether the manufacturer's designs and specifications were subjected to

15  "substantial review" rather than a mere "rubber stamp" approval. (*Id.*) While this

16  determination is necessarily fact specific, "substantial review" has plainly been shown

17  upon evidence of a "`continuous back and forth' between the contractor and the

18  government." (*Id.*) In this regard, "[t]he specifications need not address the specific defect

19  alleged; the government need only evaluate the design feature in question." (*Id.*) Once

20  again, applying these general principles to "failure to warn" claims, the fact that

21  governmental specifications or regulations did not specifically preclude the exact

22  warning desired by the plaintiff does not take a "failure to warn" claim outside the scope

23  of the government contractor defense, so long as the government was involved generally

24  as to the issue of product warnings (or specifically approved the warnings provided by

25  the contractor), and was generally aware of the hazard in question. (*Id.* at 438.) Stated

26  another way, "[i]nadequacy [of a warning] is not an issue when it is the government's

27  warning in the first place." (*Id.*)

28      22.    According to Ret. Admiral Roger Horne:

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

10

DEFENDANT LESLIE CONTROLS, INC.'S NOTICE OF REMOVAL

1
2
3
4
5
6

The Navy would not, and could not permit an equipment manufacturer or supplier to interfere with the Navy's mission by placing warnings on any equipment (or in any instructions or manuals which accompanied the equipment) on any U.S. Navy ships or in any shipyards in which U.S. Navy ships were being built or repaired that might cause sailors or workers to deviate from their mission or require the U.S. Navy to devote scarce resources to programs it deemed non-essential, in its unilateral view.

7 (See Horne Decl., Exhibit B, at 5:26-6:4.)

8      23.     As Admiral Horne's declaration demonstrates, the Navy exercised
9 complete supervision, direction and control over the design, manufacture, inspection and
10 testing of Leslie Controls' equipment. (See Horne Decl., Exhibit B, at 6:5-7:1.) This
11 control included the decision of what warnings should or should not be included on
12 every piece of equipment; in short, the Navy dictated every aspect of the design,
13 manufacture, installation, overhaul, written documentation and warnings associated
14 with its ships and did not permit deviation from any of its contractors. (See Horne Decl.,
15 Exhibit B, at 6:13-23.)

16      24.     Leslie Controls constructed its equipment according to the Navy's rigid
17 specifications, including specifications for minor asbestos-containing components, such as
18 valves, gaskets and valve packing. This case is thus substantially similar to *Issacson*,
19 *supra*, as during construction of its marine equipment for the Navy, Leslie Controls, as a
20 government contractor, acted under the direction of a federal officer when it
21 manufactured and designed the marine equipment at issue within the precise and
22 exacting specifications promulgated by the United States Navy. (See Horne Decl., Exhibit
23 B, at 2:18-3:15, 4:24-5:16, and 6:5-23.)

24      25.     As explained in the affidavit of Matthew Wrobel, "in each and all instances
25 wherein Leslie Controls contracted with the U.S. Navy for the provision of equipment,
26 the U.S. Navy exercised direction and control over the design, manufacture, inspection
27 and testing of all such equipment." (Wrobel Affid., Exhibit C, at 4:7-9.) He further
28 states:

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

11

1
2
3
4
5
6
7
8
9

> The U.S. Navy exercised direction and control over all written documentation to be delivered with its naval valves such as engineering drawings, test reports, [and] technical manuals. Leslie created the technical manuals in accordance with the Mil Specs and then submitted them for revisions, modifications and the ultimate approval of the U.S. Navy and/or its authorized government agencies. Navy personnel participated in the preparation of this kind of information and exercised specific direction and control over its contents. These manuals included safety information related to the operation of naval valves and related equipment only to the extent directed by the Navy.

10 (Wrobel Affid., Exhibit C, at 3:19-4:1.) Thus, the presence or absence of warnings
11 regarding Leslie Controls equipment was strictly controlled by the Navy, and this
12 provides a clear basis for removal under § 1442(a)(1).

13     26.     In further support of the removal, Leslie Controls provides the Declaration
14 of Lawrence Stillwell Betts.[3] *See* Affidavit of Lawrence Stillwell Betts ("Betts Affid."),
15 attached hereto as Exhibit N. Dr. Betts is a medical doctor and retired Navy captain who
16 holds a Ph.D. in occupational health and is board certified in occupational medicine and
17 industrial hygiene. According to Dr. Betts' affidavit, Leslie Controls manufactured and
18 delivered valves and other steam system components to the Navy pursuant to
19 government contracts, some of which may or may not have ended up on the ships on
20 which Plaintiff claims exposure here. However, any such equipment manufactured and
21 supplied by Leslie Controls in fulfillment of government contracts would have followed
22 the specifications set forth by the United States Government detailing required
23 components, materials, and performance characteristics. The Navy would have accepted
24 delivery of valves and related manuals only if they met their exact specifications. (Betts

25

26     [3] Lawrence Stillwell Betts, MD, is a retired United States Navy Captain, who served in
27 the Navy for almost three decades. Dr. Betts is a Professor at the Eastern Virginia
Medical School in the Department of Family and Community Medicine and a Clinical
28 Professor of Physiological Sciences. Dr. Betts is also board certified in the fields of
occupational medicine and industrial hygiene.

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

12

DEFENDANT LESLIE CONTROLS, INC.'S NOTICE OF REMOVAL

1   Affid., Exhibit N, at 2:23-3:11.)  The Navy would not have accepted, commissioned, or

2   permitted a Navy vessel to operate with equipment and system components that did not

3   comply with precise specifications set forth by the Navy, which would include providing

4   any labeling of the equipment and components.  (*Ibid.*)  A valve manufacturer, such as

5   Leslie Controls, would have had absolutely no responsibility or control over the

6   operating workplace or personnel on a Navy ship, both essential aspects of hazard

7   communication. (Betts Affid., Exhibit N, at 21:19-23:6.)

8       27.     According to Dr. Betts, beginning in the 1930s, the U.S. Navy conducted

9   extensive research concerning the hazard of exposure to asbestos. (Betts Affid., Exhibit

10   N, at 8:10-11:11.)  In the early 1940s, the U.S. Maritime Commission and the Navy set

11   standards based on the report of Dr. Philip Drinker, then Chief Health Consultant for the

12   United States Maritime Commission, as well as studies conducted by Fleischer, Viles,

13   Gade, and Drinker, called the "Fleischer-Drinker study." (Betts Affid., Exhibit N, at 12:26-

14   15:16.)  Based on these various studies, the Navy adopted a recommended "maximum

15   allowable concentration (M.A.C.)" value for asbestos of 5 MPPCF. (Betts Affid., Exhibit

16   N, at 15:17-16:14.)  After further studies were conducted in the 1950s, 1960s, and 1970s,

17   and after the passage of the Occupational Safety and Health Act in 1970, the Navy

18   reduced the permissible exposure levels to a "permissible exposure level" of 0.1 f/cc.

19   (Betts Affid., Exhibit N, at 17:1-19:6.)

20       28.     To the extent that Leslie Controls ever delivered values to the government

21   for use on Navy vessels in the 1940s and thereafter, the U.S. Government had already

22   recognized that the prolonged inhalation of a sufficient concentration of asbestos fibers

23   could result in pulmonary disease, and had held such knowledge long before the period

24   of construction of ships in the 1940s and thereafter. (Betts Affid., Exhibit N, at 3:12-5:19;

25   see generally, Betts Affid., Exhibit N, at 7:23-20:26.)  Based on that knowledge, by the

26   1940s, the Navy had developed an active and robust program to control exposure to

27   asbestos concentrations recognized to be harmful, medically monitored personnel

28   exposed to those levels, and established engineering control procedures and training, and

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

13

1  required the use of respiratory protection for at-risk personnel. (Betts Affid., Exhibit N,
2  at 3:12-5:19.)

3      29.    According to Dr. Betts, the information possessed by the U.S. Government
4  during the period from the 1940s, and the comprehensive occupational health program
5  based upon this information with respect to the specification and use of asbestos, and the
6  health hazards associated with its use aboard Navy vessels, was superior to and far
7  exceeded the information that possibly could have been provided by a valve
8  manufacturer such as Leslie Controls. (Betts Affid., Exhibit N, at 21:19-23:6.) Based upon
9  the state-of-the-art knowledge throughout that period, the U.S. Government was fully
10  aware of the health hazards of asbestos and had a program to control exposure of
11  personnel and monitor their health. (Betts Affid., Exhibit N, at 5:20-6:2.)

12      30.    Among the requirements imposed on private contractors by the Navy was
13  the use of asbestos-containing materials in the maintenance and repair of naval vessels.
14  This requirement reflected the state of the art at the time, but was also predicated on
15  military necessity. (Betts Affid., Exhibit N, at 6:10-7:9.) The Navy's decision to use
16  asbestos materials was based upon naval operating requirements and missions in light
17  of the known health hazards at various periods of time. (Betts Affid., Exhibit N, at
18  20:27-21:18.)

19      31.    According to Dr. Betts, the addition of a simple warning by a valve,
20  component or equipment manufacturer, especially one addressing an additional
21  product, which may or may not have been used in conjunction with the originally
22  supplied piece of equipment, was unnecessary and also inherently disruptive in a
23  military setting. (Betts Affid., Exhibit N, at 23:7-24:20.) Given that the Navy already
24  had its own asbestos control program, and also that the Navy required approval for all
25  manuals and verbiage on equipment, it is unlikely that the Navy would have approved
26  such warnings. (*Ibid.*) At best, a manfacturer such as Leslie Controls, which delivered
27  equipment to Navy specifications could merely have told personnel to follow the
28  Navy's own mandates for handling asbestos and asbestos-containing products, such as

1 | packings and gaskets. (Betts Affid., Exhibit N, at 26:26-27:3.)

2 |     32.    Finally, any suggestion that manufacturers such as Leslie Controls was
3 | free to depart from Navy-approved manuals in giving gratuitous warnings about the
4 | possible use of materials made by others would be incorrect. (Betts Affid., Exhibit N, at
5 | 27:21-27.) It would be unreasonable to assume that the Navy would have accepted
6 | "helpful comments" from a vendor or equipment manufacturer that was not a subject
7 | matter expert regarding the health effects or industrial hygiene controls associated with
8 | the use of asbestos-containing materials in naval applications, as the Navy already had
9 | this specific knowledge, and more. (Betts Affid., Exhibit N, at 28:1-11.)

10 |     33.    Clearly, the Horne, Wrobel, and Betts affidavits and declarations support
11 | federal removal jurisdiction under 28 U.S.C. § 1442(a)(1), as they demonstrate that Leslie
12 | Controls acted under the direction of a federal officer, that Leslie Controls has a colorable
13 | federal defense to Plaintiffs' claims, and that a causal nexus exists between Plaintiffs'
14 | claims and acts Leslie Controls performed under color of federal office.

15 |     34.    A properly removed case cannot be remanded for discretionary or policy
16 | reasons such as allegedly related state court cases or a contention that judicial economy
17 | compels remand. (28 U.S.C. § 1447(c); *Thermitron Products, Inc. v. Hermansdorfer*, 423 U.S.
18 | 336, 343-344 (1976); *Elrad v. United Life & Accident Ins. Co.*, 624 F. Supp. 742, 743 (N.D.Ill.
19 | 1985).) The federal officer removal statute is not narrow or limited, and it should not be
20 | frustrated by a narrow or grudging interpretation of § 1442(a)(1). (*Willingham v. Morgan*,
21 | 395 U.S. 402, 405 (1960).)

22 |     35.    Leslie Controls is not required to notify and obtain the consent of any other
23 | defendant in this action in order to remove Plaintiffs' action as a whole under 28 U.S.C.
24 | § 1442(a)(1). (See *Akin v. Ashland Chemical Co.*, 156 F.3d 1030, 1034-1035 (1998); *Torres v.*
25 | *CBS News*, 854 F.Supp. 245, 247 (S.D.N.Y. 1994); *Ely Valley Mines, Inc. v. Hartford Accident*
26 | *Indemnity Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981).)

27 |     36.    As required by 28 U.S.C. § 1446(b) and the local rules of this Court, true and
28 | correct copies of the process and pleadings served upon Leslie Controls are being filed

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

15

DEFENDANT LESLIE CONTROLS, INC.'S NOTICE OF REMOVAL

1 with this Notice of Removal.

2 **Conclusion**

3     37.    Removal of this action is proper under 28 U.S.C. § 1442, because it is a civil

4 action brought in a state court, and the federal district courts have original jurisdiction

5 over the subject matter under 28 U.S.C. § 1442(a)(1) because Leslie Controls was acting

6 under an officer or agency of the United States.

7     WHEREFORE, Defendant LESLIE CONTROLS, INC., pursuant to these statutes

8 and in conformance with the requirements set forth in 28 U.S.C. §1446, removes this

9 action for trial from the Superior Court of the State of California, County of Alameda, on

10 this 20th day of January 2010.

11     BRYDON HUGO & PARKER

12

13

14     By: _____
    Edward R. Hugo

15     James C. Parker
    Thomas J. Moses

16     Attorneys for Defendant
    LESLIE CONTROLS, INC.

17

18

19

20

21

22

23

24

25

26

27

28

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

16

DEFENDANT LESLIE CONTROLS, INC.'S NOTICE OF REMOVAL

1  **Via Hand Delivery**
Jeffrey A. Kaiser, Esq.
2  LEVIN SIMES KAISER & GORNICK, LLP
44 Montgomery Street, 36th Floor
3  San Francisco, CA 94104
Tel. (415) 646-7160
4  Fax (415) 981-1270
ATTORNEYS FOR PLAINTIFFS
5
All Known Defense Counsel (via regular mail)
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17
DEFENDANT LESLIE CONTROLS, INC.'S NOTICE OF REMOVAL